UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DR. DONNA ASHFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-1032 |
| | ) | Judge Aleta A. Trauger |
| TENNESSEE BOARD OF REGENTS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment filed by the defendant (Doc. No. 16), the Tennessee Board of Regents ("TBR"), to which the plaintiff, Dr. Donna Ashford, has filed a Response (Doc. No. 20), and TBR has filed a Reply (Doc. No. 25). For the reasons discussed herein, the motion will be granted, and Ashford's claims will be dismissed.

## BACKGROUND

Ashford is an African-American former employee of TBR, most recently serving as Director of Support Services for the Regents Online Degree Program ("RODP"). Ashford worked at TBR for 28 years. In that time, she received high performance evaluations and was never cited or disciplined for any improper conduct.

Dating back to the mid-1970s, TBR has rented the third and sixth floors of an office building owned by Genesco Corporation ("Genesco"), a footwear and apparel company. TBR employees regularly take breaks or walks on the building's fifth floor, which is occupied by Genesco. Genesco often places discarded, damaged, rejected, or otherwise non-prime shoes in hallway bins on the fifth floor, marked by signs indicating that the shoes are free for taking by passersby. Ashford was never instructed not to take shoes from the fifth floor.

1

On May 5, 2015, Ashford went for a lunchtime walk on the building's fifth floor. She encountered in the hallway a box containing boots. (Doc. No. 27-1 ¶ 8.) Although the boots were not in a bin and there was no sign indicating that they were free for taking, Ashford took the boots back to her floor. (*Id*. ¶ 5.) She left them in a recycling room, where they were located by TBR personnel. (Doc. No. 19-1 ¶ 9.) Ashford was eventually identified, and the incident was reported to TBR human resources personnel ("HR"). When TBR HR confronted Ashford about the boots, Ashford acknowledged that she had taken them, stating that she believed they were "trash." (Doc. No. 27-1 ¶ 8.) She apologized for what she characterized as a miscommunication and offered to return the boots immediately. (Doc. No. 1 ¶ 30-31.) The boots were returned by TBR personnel to Genesco security, and Ashford's supervisor, Dr. Patrick Wilson, was notified of the incident. (Doc. 19-1 ¶ 9-11.) Wilson recommended termination, and TBR's Vice Chancellor agreed. (*Id*.)

On May 8, 2015, TBR Chancellor John Morgan accepted the recommendation and terminated Ashford. Ashford's position remained vacant for nearly two years. In February 2017, the position was reconfigured as Campus Relations Manager, a non-director level position with no supervisory functions. The position was filled by Colbe Wilson, a Caucasian female. The position's requirements were altered to include a Master's Degree, which Wilson possessed but Ashford did not, and to require only two years of job-related experience (down from three years, which Ashford possessed but Wilson did not).

In June 2015, Ashford's had attorney sent TBR a letter outlining Ashford's allegations of wrongful termination. As a result, TBR conducted an internal investigation into the matter, for which Ashford declined to be interviewed. (Doc. No. 19-2 ¶ 5.) The investigating employee determined that there was insufficient evidence to conclude that Ashford was discharged for any

2

improper reason. (*Id*. ¶ 6.) Ashford filed a complaint with the EEOC and received a Right to Sue letter. On May 5, 2016, Ashford filed suit in this court, alleging that TBR discriminated against her in violation of Title VII and the ADEA. This was the second time that Ashford had brought allegations of racial discrimination against TBR. In 2013, Ashford complained to TBR administrator Dr. Kay Clark that Ashford was given more responsibilities than similarly-situated Caucasian employees, despite being paid less. (Doc. No. 20-1 ¶ 5.) No action was taken. (*Id*.)

TBR has faced several other issues with racial dynamics in recent years. Dr. Patrick Wilson—Ashford's Caucasian supervisor who recommended her termination—has had multiple discrimination complaints filed against him by TBR employees. At least two of those employees specifically complained that Wilson treated employees differently or unfairly because of race. Another Caucasian TBR employee, Lisa Hall, was put on probation for an incident in which she yelled at, cursed at, and threatened an African American temporary employee. (*Id*. ¶ 17.)

Yet another Caucasian TBR employee, Dr. David Tiller, drew criticism from fellow employees for a training exercise that was perceived as racially offensive. (Doc. No. 27-2 ¶ 5.) Tiller tied together ropes used as props in the training exercise and hung them on the wall outside Ashford's office. (*Id*.) Tiller made comments perceived as racially offensive before the exercise, including a joke about "having a hanging" with regard to the ropes. (Doc. No. 1 ¶ 15-c.) A complaint was filed by a colleague in Ashford's department, and the ropes were removed from the wall. (Doc. No. 27-2 ¶ 5.) Tiller was not terminated.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant

3

shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

**I.     Title VII**[1]

A plaintiff may prove unlawful discrimination by proffering either direct or indirect evidence. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 302 (6th Cir. 2016). In this case, the plaintiff proffers indirect evidence. To analyze Title VII claims using indirect evidence, the

---

[1] In her Response, Ashford argues, for the first time, that TBR is also liable under Title VII for gender discrimination. Because Ashford did not plead a gender discrimination claim in her Complaint, the court will not consider her argument. This section addresses only her race discrimination claim.

4

Sixth Circuit applies the burden-shifting approach established by the *McDonnell Douglas* line of cases. *Id; see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under this approach, Ashford must first establish the elements of a prima facie case. To do so, she must show that she was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly-situated employees outside the protected class. *Tennial*, 840 F.3d at 302 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)). Only if Ashford can establish these elements does the burden shift to TBR to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.

Ashford has established the first three elements of her prima facie case with regard to her termination. First, as an African-American, she is a member of a protected class for purposes of her race discrimination claim. Second, her discharge is a classic example of an adverse employment action. *Vincent v. Brewer Co.*, 514 F.3d 489, 495 (6th Cir. 2007). Third, she was objectively qualified for the position she held, and the defendant does not contend otherwise. Indeed, in light of the fact that Ashford worked at TBR for more than twenty-five years with strong performance reviews and no disciplinary record, TBR would have difficulty arguing that she was unqualified. *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–66 (6th Cir. 2000) (noting that determination of the "qualified" prong of the prima facie case will generally "involve assessing whether the plaintiff was meeting the employer's expectations prior to the onset of the events that the employer cites as its reason for the termination").

But Ashford fails to satisfy the fourth prong and, therefore, cannot establish a prima facie case of discrimination. Ashford argues that she "was treated worse than white employees of the

TBR" who were not terminated for conduct comparable to or worse than hers. (Doc. 21 p. 8.) As an example, she points to Dr. David Tiller, whom she identifies only as a "white man" (*id*.) and "Caucasian employee of the TBR." (Doc. 1 ¶ 17). However, the Sixth Circuit requires a higher level of specificity to establish that a plaintiff and a comparator employee were similarly-situated.

"The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;' rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co*., 154 F.3d 344, 352 (6th Cir. 1998) (internal citations omitted). The Sixth Circuit has offered guidance on what those "relevant aspects" entail when the adverse employment action is discipline. "[T]o qualify as 'similarly-situated' in the disciplinary context, the plaintiff and the colleagues to whom he seeks to compare himself 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (internal citations omitted). The plaintiff bears the burden of production at the summary judgment stage to prove by evidence in the record that she is similarly-situated to fellow employees. *See Mitchell v. Toledo Hosp*., 964 F.2d 577, 583 n.5 (6th Cir. 1992).

Ashford does not meet that burden. Even though the court would have no difficulty finding that Tiller's conduct was at least of comparable seriousness to Ashford's, there is no evidence in the record that Ashford and Tiller reported to the same supervisor or were held to the same standards. The record does not even indicate what Dr. Tiller's role and responsibilities

were: Ashford offers no details beyond the fact that Tiller was a white man employed by the TBR. *See id.* ("There is *no evidence of record* to establish that such different positions, or the duties and responsibilities required of holders of these jobs, are sufficiently similar so as to render them 'comparable' positions") ("[W]ithout evidence that these two employees reported to the same supervisor, there can be no showing that they were 'subject to the same standards.'"). Without more, Ashford cannot establish that she was similarly-situated to Tiller.

Ashford also argues that she satisfies the fourth prong because she was replaced by someone outside the protected class. Specifically, she argues that she was replaced by Colbe Wilson, a Caucasian woman who worked at TBR as an intern during Ashford's tenure. (Doc. No. 21 p. 8.) In the Title VII context, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1470 (6th Cir. 1990). "Of course an employer could not avoid liability by changing the job title or by making minor changes to a job indicative of an attempt to avoid liability." *Id*. at n.10.

The court finds that Ashford was not replaced by Wilson for Title VII purposes. Nearly two years after it fired Ashford, TBR reconfigured Ashford's position as Campus Relations Manager and promoted Wilson to the role. Unlike Ashford's Director of Support Services position, Wilson's Campus Relations Manager position is not a director-level position and has no supervisory functions. This constitutes a major shift in the position's core responsibilities, rather than simply a name change or a cosmetic alteration in function. Ashford's supervisory duties were either assigned to employees other than Wilson or eliminated. As Ashford herself

7

acknowledges in her Response, "the job description of [Ashford's] former position was materially altered", and "Ashford's former position's duties were re-written . . . ." (Doc. No. 21 p. 8.) Ashford was therefore not replaced by Wilson. Because Ashford was not similarly-situated to Tiller or replaced by Wilson, she cannot satisfy the fourth prong and thus fails to establish a prima face case of race discrimination based on her termination.

Ashford sets forth an additional theory of Title VII race discrimination based on her salary. Ashford pleads that she was unfairly compensated relative to her qualifications and that she was the lowest paid RODP director, despite having more responsibilities and experience than other directors. She does not offer evidence that her salary was substandard given her qualifications, responsibilities, or experience. She does not offer evidence showing that she was paid less than any other director. But even if Ashford were paid less than other directors, she provides no support whatsoever for her claim that the disparity was linked to her race.

Ashford does not offer evidence that she was similarly situated to directors outside the protected class in a way that would warrant equal pay. "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Hatchett v. Health Care & Ret. Corp. of Am.*, 186 F. App'x 543, 548 (6th Cir. 2006). Ashford does not even identify the directors she claims were better compensated than she, much less their job titles. She states that she "had more responsibilities placed on [her] than similarly situated Caucasian employees" but provides no evidence that her responsibilities were qualitatively comparable to those placed on any higher-paid directors. (Doc. No. 20-1 ¶ 4.) She states that she "had the most accumulated experience of any RODP member" but provides no evidence that her experience was qualitatively comparable to that of any higher-paid directors. (*Id.*) Title VII requires more. *See id.* (finding no discrimination where no record evidence

8

supported that plaintiff's position was sufficiently similar to higher-paid position to merit equal pay). Given the lack of factual support for her claim, Ashford cannot establish a prima facie case that she was underpaid because of her race. Her Title VII claim is dismissed.

**II. ADEA**

Ashford pursues her ADEA claim, despite acknowledging in her Response that state sovereign immunity has not been abrogated for purposes of the ADEA. *See Kimel v. Fla. Bd. of Regents*, 120 S. Ct. 631 (2000). Ashford does not contest that TBR is protected by Tennessee's sovereign immunity. Ashford's ADEA claim is therefore dismissed.

## **CONCLUSION**

For the foregoing reasons, TBR's Motion for Summary Judgment will be granted by separate order.

ENTER this 29th day of November 2017.

_____
ALETA A. TRAUGER
United States District Judge